**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **KELLY FOSTER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 14-1241 (JEB)** |
| **SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Plaintiff Kelly Foster, a former employee of Sun Trust Bank, brought this action under the Employee Retirement Income Security Act of 1974, claiming that Defendants Sedgwick Claims Management Services, Inc. and the Bank's Short-Term and Long-Term Disability Plans improperly denied her disability benefits. She asserts that she submitted sufficient medical evidence of conditions – including fibromyalgia, fatigue, and anxiety disorder – that render her "totally disabled" within the meaning of the Plans, and she further maintains that she has satisfied all of the Plans' other preconditions for receiving benefits.

Disagreeing with Foster's contentions, Defendants have filed a Motion for Summary Judgment. They first point out that the Short-Term Disability Plan is not even governed by ERISA. They also argue that the denial of long-term benefits was appropriate in light of the aggregate medical evidence and the eligibility requirements of the Plans.

Concluding that Defendants are entitled to judgment, the Court will grant their Motion.

1

I.      **Background**

Sun Trust Bank automatically enrolls all of its employees in the company's Short-Term
Disability (STD) and Long-Term Disability (STD) Benefits Plans after six months of employment.
See Mot., Exh. 2 (STD Benefits Handbook) at 1.   Plaintiff, formerly a Mortgage Loan Closer at
Sun Trust, was enrolled in both Plans.  See Mot., Exh. 5 (STD Claim File) at 1.  Sun Trust retains
Sedgwick as the claims administrator for both of its Disability Benefits Plans.  See Mot., Exh. 4
(Affidavit of Anna M. Grant) at 1.   The claims administrator "make[s] a determination regarding
whether your medically-documented claim entitles you to a Long-Term Disability [or Short-Term
Disability] benefit."  Mot., Exh. 3 (LTD Plan) at 11.

Enrolled employees are eligible for STD benefits if the claims administrator determines
that for more than five consecutive business days, the employee is "not able, solely because of
disease or injury, to perform the material duties of their own occupation and are under the regular
care of a physician."   STD Benefits Handbook at 2.   This determination is to be based on
"[o]bjective medical documentation supporting the employee's claim.'"  Id. at 1.

An employee is eligible for LTD benefits, conversely, if, after 180 consecutive calendar
days of total disability, he or she remains disabled.  See LTD Plan at 4.  During the entirety of this
180-day "waiting period," the employee must be entitled to STD benefits or Workers
Compensation, see id., the latter of which is not at issue here.  The waiting period commences on
the first day the employee is absent from work as a result of his or her disability, and it is broken
(and must be restarted) if the employee returns to work for more than 30 days.  Id.  These
requirements are laid out in the Plan documents and are discussed in more detail in the Analysis.
See *infra* Section III.B.1.

According to Foster, she suffers from a series of disabling conditions, including fibromyalgia and fatigue.  See STD Claim File at 1, 23.  She filed her first claim for disability benefits under Sun Trust's STD Plan in January 2012.  See Mot., Exh. 7 (Claim Log I) at 36.  Sedgwick conditionally approved Plaintiff's claim but later discontinued her benefits the following month, after she failed to provide medical support for a continuing disability.  See Mot., Exh. 8 (Letter Discontinuing Temporary Benefits) at 1.

Foster then filed another STD benefits claim – the claim at issue in this action – on August 20, 2012.  See STD Claim File at 1.  On two occasions after the filing of this claim, Sedgwick notified Plaintiff that she had to file medical documentation in support of her claim before September 7, 2012.  See id. at 4, 15.  After Foster failed to do so, Sedgwick denied her claim on September 10, 2012.  See id. at 18.  Five days after the deadline, Dr. Robert Mayfield submitted an Attending Physician Statement in support of Plaintiff's claim, in which he reported that she suffered from fibromyalgia, dry eyes, and anxiety.  See id. at 20-22 (Statement of Dr. Mayfield).  His diagnosis cited an MRI performed in 2011, and he noted that further objective findings would require additional testing.  See id. at 23.  Finding that this Statement did not constitute "satisfactory" objective medical documentation of Plaintiff's disability, Sedgwick again denied her STD claim on September 13, 2012.  See Mot., Exh. 13 (Claim Log II) at 46-47; STD Claim File at 26-27.

On September 25, 2012, Sun Trust terminated Foster's employment as a result of her absence from work.  See Grant Aff. ¶ 4.  On that same day, a second physician, Dr. James Sutherland, submitted an Attending Physician Statement on her behalf.  See Mot., Exh. 14 (Statement of Dr. Sutherland).  Although this Statement confirmed many of Dr. Mayfield's

diagnoses, it also indicated that Plaintiff's physical condition did not functionally limit her activities of daily living and did not merit driving restrictions. See id. at 2.

Plaintiff, through counsel, formally appealed the denial of her claim for STD benefits, which she was permitted to do even after her termination. See STD Claim File at 28. After additional review, including consultation with independent physicians, Sedgwick upheld this denial on March 29, 2013. See Mot., Exh. 16 (STD Appeal Denial).

Plaintiff next filed a claim for benefits under Sun Trust's LTD Plan on October 31, 2013. See Claim Log II at 4. Sedgwick denied this claim on November 8, on the basis that Foster had not established that she was entitled to STD benefits or Workers' Compensation for the duration of the 180-day waiting period. Mot., Exh. 17 (LTD Denial Letter). Plaintiff appealed the denial of her claim for LTD benefits on January 10, 2014, but Sedgwick upheld it on January 27. See Claim Log II at 2.

Foster then filed this action on July 21, 2014, seeking to clarify and enforce her rights under the benefits plans, as permitted by ERISA. See 29 U.S.C. § 1132(a).

## II.    Legal Standard

"There is a divide among the circuit courts of appeal . . . as to whether Fed. R. Civ. P. 56 is necessarily the appropriate mechanism to resolve a § 1132(a)(1)(B) ERISA claim for denial of benefits." Horton v. Life Ins. Co. of N. Am., No. 14-3, 2015 WL 1469196, at *12 (D. Md. Mar. 30, 2015). Because the D.C. Circuit has not ruled on the question and because both parties endorse the use of Rule 56, the Court will proceed under that framework. It notes that its decision would be the same under Rule 56 (no material dispute of fact regarding whether Sedgwick abused its discretion) as under Rule 52 (no abuse of discretion).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson, 477 U.S. at 248).

Although the Court must view all of the facts in the light most favorable to the non-moving party, the non-moving party's opposition must consist of more than mere unsupported allegations or denials, and it must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is required to provide evidence that would permit a reasonable factfinder to find in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). A "mere . . . scintilla of evidence" in support of the non-movant's position is insufficient to defeat a motion for summary judgment. Anderson, 477 U.S. at 252. And if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. 372, 380 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III.    Analysis**

ERISA was enacted to protect "the interests of participants in employee benefit plans and their beneficiaries."   29 U.S.C. § 1001(b).   Under § 502(a) of the Act, "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits . . . . [or] to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits."  Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004) (quoting 29 U.S.C. § 1132(a)(1)(B)). Plaintiff invokes this section, asserting that she is entitled to past and future benefits under Sun Trust's STD and LTD Benefits Plans.  The Court will address each Plan in turn.

A.  Short-Term Disability Benefits

As a threshold matter, Defendants contend that this Court cannot even assess the merits of their denial of STD benefits.  More specifically, they point out that Sun Trust's STD Plan is not governed by ERISA because it is not a qualifying "employee welfare benefit plan."  Mot. at 13. The Court concurs.

Only "a participant or beneficiary" in an "employee welfare benefit plan" may bring an action challenging her employer's denial of benefits under ERISA.  See 29 U.S.C. §§ 1132(a)(1); 1002(1).  Congress has authorized the Department of Labor to define the "technical" terms of the statute, and the Department's regulations exclude "payroll practices" plans from its technical definition of an "employee welfare benefit plan."  Id. § 1135; 29 C.F.R. § 2510.3-1.  Payroll practices are those paid "'out of [an] employer's general assets' rather than from a trust fund." Mass. v. Morash, 490 U.S. 107, 117 (1989) (quoting 29 C.F.R. § 2510.3-1(b)(3)).  Such payroll-practices plans, typically paid directly by the employer, include overtime pay, shift premiums, holiday and weekend premiums, and "[p]ayment of an employee's normal compensation, out of

the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons." 29 C.F.R. §§ 2510.3-1(b)(1)-(2).

This is the case here. Sun Trust dispenses benefits pursuant to its STD Plan from its general assets, rather than from a designated fund. Indeed, the STD Plan is entirely separate from Sun Trust's Employee Benefits Plan. See Mot., Exh. 1 (Benefits Overview) at 5-6 (describing STD benefits as "in addition to" benefits available through Employee Benefits Plan). SunTrust's Health and Welfare Benefits Handbook expressly identifies only its Employee Benefit Plan, Group Universal Life Plan, and LTD Plans as benefit programs governed by ERISA. See id. at 16. As such, the Court concludes that the STD Plan is properly characterized as a payroll practice and is thus beyond the scope of ERISA.

Plaintiff does not contest this characterization of the STD Plan. (In fact, the record indicates that Sedgwick informed Foster's attorney that the STD Plan is not governed by ERISA as far back as November 2012. See STD Claim File at 36.) Instead, she makes the puzzling argument that because her STD claim is not covered by ERISA, the Court is not limited to the record in reviewing its denial, and she seeks additional discovery to aid this *de novo* review. Yet she fails to identify any alternative basis – statutory, equitable, or other – for challenging the denial of her claim for STD benefits, and her Complaint expressly invokes ERISA alone. See Compl., ¶¶ 23-25. Of course, Plaintiff could have also elected to raise state-law breach-of-contract claims. See, e.g., Aiena v. Olsen, 69 F. Supp. 2d 521, 531 (S.D.N.Y. 1999) (explaining that, when there are "uncertainties" about whether a plan is covered by ERISA, litigants frequently plead both ERISA and state-law contract claims, as "it would be foolish to put all of one's eggs in either the

ERISA or the state law basket"). As she did not do so, the Court cannot adjudicate causes of action absent from the Complaint.

Because the STD Plan is exempt from ERISA, Defendant is entitled to judgment as a matter of law on Foster's claims arising from that Plan.

B. Long-Term Disability Benefits

In contrast to Sun Trust's STD Plan, both parties agree that its LTD Plan is governed by ERISA. See Benefits Overview at 6 (chart explaining that LTD benefits are funded by separate trust); see also LTD Plan at 13 (informing LTD claimants of their "right to file a civil action under ERISA Section 502(a) following an adverse determination"). The Court may thus appropriately consider the merits of Sun Trust's denial of Foster's claim for LTD benefits.

In reviewing such a denial under ERISA, the Court is generally limited to the record before the claims administrator. See Zalduondo v. Aetna Life Ins. Co., 941 F. Supp. 2d 125, 132 (D.D.C. 2013). The standard of review, however, is not so straightforward. As the D.C. Circuit has explained, "We review a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) under a *de novo* standard, rather than under the more deferential arbitrary and capricious standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Pettaway v. Teachers Ins. & Annuity Ass'n of Am., 644 F.3d 427, 433 (D.C. Cir. 2011) (internal citation and quotation marks omitted).

The parties here dispute whether Sun Trust's LTD Plan vests such discretionary authority in Sedgwick, the Plan's claims administrator. In resolving this issue, the Court looks to the Plan documents to identify vesting or "empowering" language. See Becker v. Weinberg Group, Inc. Pension Trust, 473 F. Supp. 2d 48, 61 (D.D.C. 2007). The Plan need not use the word "discretion"; rather, "the Supreme Court [has] directed lower courts to focus on the breadth of the

administrators' power – their 'authority to determine eligibility for benefits or to construe the terms

of the plan.'" Block v. Pitney Bowes Inc., 952 F.2d 1450, 1453 (D.C. Cir. 1992) (quoting Firestone

Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989)).   For example, when a benefits plan

instructs the claims administrator to determine whether an employee meets the medical criteria for

benefits, such instruction vests discretionary authority in the administrator.   See Doe v. Mamsi

Life and Health Ins. Co., 471 F. Supp. 2d 139, 147 (D.D.C. 2007).

The language of the Plan here is clear in delegating to Sedgwick the authority to assess

eligibility for benefits: "You are disabled if, due to injury, illness, or pregnancy supported by

medical documentation, you meet the following definition of disability as determined by the claims

administrator . . . ." LTD Plan at 4 (emphasis added); see also id. ("The claims administrator will

evaluate the medical documentation submitted on your behalf and determine if your condition

meets the Plan's definition of Total Disability.").   The Plan's definition of disability requires that

employees receiving benefits are medically "unable to perform each of the material duties of the

occupation [they] regularly perform for SunTrust," and it permits Sedgwick, as claims

administrator, to determine whether an employee meets that definition.   See id.   The language of

SunTrust's LTD Plan clearly establishes a zone of discretion within which Sedgwick may

determine whether to grant or deny benefits claims.   Even if, as Plaintiff asserts, Sun Trust and

Sedgwick share some administrative tasks related to the management of the LTD Plan, the

determination of eligibility is left entirely to Sedgwick.   As a result, the Court reviews the denial

of Plaintiff's claim for LTD benefits under the deferential arbitrary-and-capricious standard.

In the ERISA context – specifically, for "actions under § 1132(a)(1)(B) challenging benefit

eligibility determinations" – the Supreme Court has explained that the arbitrary-and-capricious

standard functions much like the "deferential standard of review appropriate when a trustee

exercises discretionary powers." <u>Firestone Tire & Rubber Co.</u>, 489 U.S. at 109-11.  A reviewing

court "should analogize a plan administrator to the trustee of a common-law trust; and it should

consider a benefit determination to be a fiduciary act." <u>Metro. Life Ins. Co. v. Glenn</u>, 554 U.S.

105, 111 (2008).  Where the benefits plan "grant[s] the administrator or fiduciary discretionary

authority to determine eligibility for benefits," a court reviews the exercise of that authority under

an "abuse-of-discretion standard." <u>Id.</u> (internal quotation marks and citations omitted).  For,

"[e]nsuring that reviewing courts respect the discretionary authority conferred on ERISA

fiduciaries encourages employers to provide medical and retirement benefits to their employees

through ERISA-governed plans—something they are not required to do." <u>Id.</u> at 120 (Roberts, C.J.,

concurring in part).  With that in mind, the Court turns now to Sedgwick's discretionary exercise

of its "fiduciary" authority.

### 1. Waiting Period

To remind the reader, eligibility for LTD benefits under the terms of the Plan requires a

claimant to be disabled for a 180-day "waiting period."  During this waiting period, a claimant

must (1) not return to work for more than 30 days and (2) maintain eligibility for STD benefits or

Workers' Compensation.  Defendants assert that Sedgwick properly denied Plaintiff's claim for

LTD Benefits because she did not satisfy these two waiting-period requirements. <u>See</u> LTD Denial

Letter at 1.  Foster disagrees.

The record and the parties' arguments as to the first waiting-period requirement are,

unfortunately, extremely unclear.  To begin, the parties part ways on what precise dates the waiting

period encompasses here.  <u>Compare</u> LTD Denial Letter at 1 (identifying August 20, 2012, to

February 15, 2013, as Foster's waiting period), <u>with</u> Opp. at 19 (contending that Foster's waiting

period started in January 2012 and ended in mid-June of that year).  Next, and more fundamentally,

they never explain how the waiting period operates, and the language of the LTD Plan itself offers no clear guidance. For example, must the 30 days in which a claimant returns to work run consecutively? Is this 30 calendar days or 30 work days? If the claimant returns on day 155 and remains at work thereafter, is she still considered eligible because she returned for fewer than 30 days in a 180-day period? Finally, the timesheets Defendants attach are inconclusive at best. They do not clearly indicate which days Defendants counted toward Foster's waiting period; on some days, they do not even note whether Foster was absent or at work; and, as submitted to the Court, they cover only the calendar year 2012. See Reply, Exh. A (Timesheets). In light of the lack of clarity as to both the days that Foster was absent from work because of her disability and also the Plan's method of counting days for the LTD waiting period, the Court cannot determine as a matter of law that she did not satisfy this first waiting-period requirement.

This is not enough for her to prevail, however. Foster must also show that she was "entitled to Short-Term Disability or Workers' Compensation benefits for all of the LTD waiting period." LTD Plan at 5. This she has not done. Foster does not contend that she was entitled to Workers' Compensation at any time, so the only question for the Court is whether she was entitled to STD benefits. At various points in their papers, both parties appear to elide the distinction between being entitled to benefits and receiving benefits. The parties agree, in fact, that Sedgwick "continuously den[ied] Ms. Foster's short-term disability benefits" after the filing of her August 20, 2012, claim, so she did not receive any STD benefits as a result of that claim. See Opp. at 7. (Indeed, they seem to agree that the only STD benefits Foster ever received were conditional, temporary benefits paid to her in early 2012. See Timesheets at 1-11 (indicating that from January 13 to February 7, 2012, Foster was "STD Approved").) But Plaintiff nonetheless maintains that she was entitled to STD benefits that she did not receive – that is, she should have been receiving

STD benefits and so is entitled to LTD benefits now.  For the reasons that follow, the Court

concludes otherwise.

### 2. *Eligibility for STD Benefits*

To qualify for STD benefits, an employee must demonstrate that for more than five

consecutive days she was incapable, solely because of her disease or injury, of performing "the

material duties" of her occupation.  See STD Plan at 2.  For LTD benefits, she must maintain such

STD-benefit eligibility for 180 days.  See LTD Plan at 4, 5.

The Court's review of a discretionary claim denial, while deferential, is guided by a few

general principles – notably, the language and purpose of the plan.  See Germany v. Operating

Eng'rs Trust Fund of Washington, D.C., 789 F. Supp. 1165, 1167-68 (D.D.C. 1992).  According

to the Sun Trust STD Plan, benefit claims must be supported by "objective medical

documentation."  STD Plan at 2.  Dr. Mayfield's Attending Physician Statement provided the

central medical evidence Plaintiff submitted with her STD claim.  As her primary-care physician,

Mayfield reported that he had diagnosed Plaintiff with fibromyalgia, xerosis (dry eyes), and

anxiety disorder on May 23, 2012.  See STD Claim File at 21 (Statement of Dr. Mayfield).

Although he opined that Plaintiff had not recovered sufficiently to return to work, he estimated

that she should be able to do so in one year.  Id. at 22.  In his Statement, Mayfield included the

following "objective findings":

> Multiple tender trigger points are present.  Painful range of motion
> of neck.  Presentation with an anxious and frenetic affect, with poor
> organization, flight of ideas and somatization.
>
> MRI December 2011: Multi-segmental degenerative disk
> osteophytic changes and associated uncinate joint hypertrophy with
> associated canal foraminal narrowing C5-C6, C3-C4 segment.

Id. at 23.   The Statement included no other test results or specific medical information about

Plaintiff's condition.   Further objective findings, Mayfield emphasized, will require a functional

capacity evaluation and formal neuropsychiatric testing.   Id.

Yet, on January 23, 2012, Mayfield had issued a Return-to-Work Certificate for Foster –

after the 2011 MRI – indicating that she could work "without restrictions" by February 18, 2012.

See Mot., Exh. 9 (Return to Work Certificate) at 1.   The doctor, moreover, provided no explanation

of any changes in Foster's medical condition in the intervening five months before he submitted

his Statement in support of her STD-benefits claim.   Unsurprisingly, Sedgwick was not persuaded

by the meager evidence in Mayfield's Statement – namely, an old MRI that had once supported a

contrary conclusion about Plaintiff's disability and a cursory description of her present ailments.

The Court, therefore, cannot conclude that Sedgwick abused its discretion in determining that

Mayfield's Statement was not satisfactory proof of Foster's disability.

In addition to Mayfield's Statement, Plaintiff filed a second Attending Physician

Statement, completed by Dr. Sutherland, albeit 18 days late (and 12 days after Sedgwick's second

denial of Foster's STD claim).   Sutherland specifically opined that Plaintiff could not perform her

work because of her disability and would likely be unable to return to work for another year.   See

Statement of Dr. Sutherland at 2.   But he also noted that her condition warranted no restrictions on

her activities of daily living, no driving restrictions, and no emergency-room visits, and he reported

some improvement to her pain – the primary symptom of her alleged disability – after medication.

Id.   Again, the Court believes Sedgwick could reasonably have determined that Sutherland's

opinion regarding Plaintiff's work capabilities was undermined by other information in his

Statement.

Per Dr. Mayfield's suggestion, Plaintiff did eventually secure a functional-capacity evaluation, months after she filed her STD claim.  See Opp., Exh. B (Functional Capacities Evaluation).  That evaluation was performed by a physical therapist, who opined that Plaintiff was not fit to work.  Id. at 1.  A later "neuropsychological evaluation," conducted by a clinical psychologist on September 28, 2012, concluded that Plaintiff exhibited "a mix of strengths and weaknesses" and indicated that Plaintiff may struggle with some workplace activities.  That evaluation did not opine, however, that Plaintiff was completely unable to perform her occupational responsibilities.  See Opp., Exh. C (Psychological Evaluation) at 3.  These additional tests were submitted with Foster's appeal, rather than with her claim.  Plaintiff contends that "Sedgewick [sic] ignored tests offered by Plaintiff" and instead relied on tests "conducted by the doctors hired by Defendants. . . ."  Opp. at 11.

Sedgwick does not deny that, in evaluating her appeal, it did consult with independent physicians.  See STD Appeal Denial at 1-2.  These physicians – a rheumatologist and a psychiatrist – did not examine Foster directly, but they did review all of the medical documentation in her claim file, including these later tests, and concluded that "the clinical findings do not support that Mrs. Foster was disabled from her regular unrestricted job. . . ."  Id. at 2.  The language of the STD Plan, furthermore, does not require that the claims administrator afford a claimant's non-physician's medical evidence greater weight than an independent physician's evaluation or Plaintiff's own physician's evaluations.  Cf. Pettaway v. Teachers Ins. & Annuity Ass'n of Am., 699 F. Supp. 2d 185, 205 (D.D.C. 2010) (noting that "it is not an abuse of discretion to value the opinions of the insurer's own medical consultants over those of the participant's treating physician") (internal quotation marks, citation, and alternations omitted), aff'd, 644 F.3d 427 (D.C. Cir. 2011).    More importantly, Plaintiff's belatedly proffered functional-capacity and

neuropsychological evaluations do not compel the conclusion that she was disabled within the meaning of the Plan.  These evaluations, like the other medical reports in her file, evince ongoing symptoms and treatment, but they do not establish a material factual question whether her condition was so severe that Foster was unable, for 180 days, to perform the responsibilities of a Mortgage Loan Closer solely by reason of disease or illness.  Plaintiff, in turn, points to no evidence that Sedgwick ignored the tests she provided; she simply does not like the weight it afforded them.

While Plaintiff's ailments may well be real, the full evidentiary record before the claims administrator did not demonstrate that she was eligible for STD benefits.  The Court, accordingly, cannot conclude that the denial of her claim was arbitrary or capricious.  See Pettaway, 699 F. Supp. 2d at 203 (a claims administrator's eligibility determination, when supported by principled reasoning and evidence, will not be overturned "even if an alternative decision also could have been considered reasonable" under abuse-of-discretion review) (internal quotation marks and citation omitted).  In this case, the claims administrator determined that Plaintiff did not satisfy the requirements of the LTD Plan's waiting period, in part because of her failure to demonstrate entitlement to STD benefits during that time.  In light of the deferential standard of review, the Court concludes as a matter of law that this determination was proper.

*3.  Other Arguments*

Plaintiff advances three additional arguments in her Opposition, none of which entitles her to LTD benefits.  First, she asserts that Sun Trust's decision to grant her Extended Illness Bank (EIB) Leave "demonstrates acknowledgement from SunTrust" that she was disabled.  See Opp. at 13.  She states that her EIB file included "the same paperwork she used to apply for STD," and she believes the result of the two claims ought to have been the same.  See id. at 14.  Defendants

15

correctly point out, however, that the eligibility threshold for EIB is much lower than for STD benefits. EIB requires only that a claimant demonstrate a "serious, chronic health condition" that prevents her from working for <u>one</u> full day.  <u>See</u> Opp., Exh. D (EIB Program Overview) at 1.   The STD Plan, on the other hand, provides more generous benefits but demands greater proof of a more onerous disability, lasting for at least five days.  <u>See</u> STD Plan at 1, 3.  It thus makes perfect sense that the medical evidence in Foster's file might be sufficient to support a grant of EIB benefits but insufficient to render her eligible for STD benefits, as eligibility for the former does not, *ipso facto*, establish eligibility for the latter.

Second and relatedly, Plaintiff argues that Defendants arbitrarily used a different definition of disability in assessing her eligibility for Family and Medical Leave Act benefits than it employed in assessing her STD claim, notwithstanding Plan documents suggesting that the "standard adopted by Sun Trust to provide both FMLA and STD coverage is the same."  Opp. at 17-18.  Of course, to the extent that Foster seeks to belatedly include a claim for relief under the FMLA, she cannot do so without formally amending her Complaint for the reasons discussed *supra*.  And Plaintiff's efforts to conflate a grant of FMLA leave with entitlement to STD benefits must also fail, as the record belies the position that the two programs operate under the same "standard" of disability.  <u>Compare</u> Opp., Exh. G (Benefits Correspondence) at 2 (permitting FMLA leave for a "serious health condition that makes you unable to perform the essential functions of your job" but also for childbirth or adoption, care of an injured or ill spouse, child, parent, or next of kin; care of a relative in the armed forces, and other purposes) <u>with</u> STD Plan at 1, 2 (explaining that the plan "provides benefits to qualifying employees who are disabled because of a non-work-related illness or injury . . . after a five-day waiting period" and are in the regular care of a physician but not for other purposes).  The Plan states that "STD will run concurrently with Family and

Medical Leave [] where applicable" and that FMLA allows employees "to be reinstated to their former positions, or an equivalent position, . . ." whereas "[r]einstatement following a leave involving receipt of STD benefits is not guaranteed . . . ." Id. at 3.  Clearly, these are two discrete programs; though their documents may share some language, they are not identical in eligibility requirements, benefits, or operation.  As with EIB, grant of one does not perforce entitle an employee to receipt of the other, so denying an STD claim after granting the claimant FMLA leave is not arbitrary and capricious.

Finally, Plaintiff contends that Sedgwick labored under a conflict of interest because, as claims administrator for both Plans, it had an incentive to deny her STD benefits in order to avoid paying her LTD benefits in the future.  See Opp. at 17.  This conflict of interest, she believes, mandates a more searching review of the denial of her claim than would be required by the arbitrary-and-capricious standard.  The Supreme Court, however, has already rejected that argument:  Recognizing the potential for such conflicts of interest, the Supreme Court permits reviewing courts to consider the conflict as "a factor in determining whether there is an abuse of discretion," Metro. Life Ins. Co., 554 U.S. at 111 (internal quotation marks and citations omitted), while maintaining that this does not merit "a change in the standard of review . . . from deferential to de novo . . . ." Id. at 115.  Here, Plaintiff does not suggest that the conflict of interest altered or in any way motivated Sedgwick's eligibility determination in her case, nor does she point to "a history of biased claims administration." Id. at 117.  The mere existence of the conflict – present in "the lion's share of ERISA plan claims denials," id. at 116 – is not enough to dispel the Court's conclusion that Sedgwick did not arbitrarily or capriciously deny LTD benefits to Foster.

**IV.     Conclusion**

Finding that Plaintiff's challenge to Defendants' denial of her claim for STD Benefits is

not governed by ERISA, and that her challenge to the denial of her claim for LTD Benefits is not

meritorious, the Court will grant Defendants' Motion for Summary Judgment.  A separate Order

will so state.


                                                    /s/ *James E. Boasberg*
                                                    JAMES E. BOASBERG
                                                    United States District Judge


Date:  August 28, 2015