**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KELLY FOSTER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  14-1241 (JEB)** |
| **SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

On August 28, 2015, this Court issued a Memorandum Opinion and separate Order granting summary judgment in favor of Defendants Sedgwick Claims Management Services, Inc., and Sun Trust Bank's Short-Term and Long-Term Disability Plans.  See ECF Nos. 28-29. Plaintiff Kelly Foster now moves under Federal Rule of Civil Procedure 59(e) to alter or amend that judgment and under Rule 15(a) to amend her Complaint.  As the arguments and legal theories she offers are based neither on new or previously unavailable evidence nor on any intervening change in the law, the Court will deny the Motion.

## I.  Background

The background of this case is set forth in greater detail in the Court's Opinion, see Foster v. Sedgwick Claims Mgmt. Servs., Inc., 2015 WL 5118360 (D.D.C. Aug. 28, 2015), but a truncated summary of the dispute will suffice here.  Plaintiff, a former employee of Sun Trust Bank, asserts that she suffers from a host of physical conditions – including dry eyes, anxiety, fatigue, and fibromyalgia – that rendered her "totally disabled" and unable to work.  Id. at *1. She applied for but was denied benefits under the Bank's Short-Term Disability (STD) Plan, as

1

well as its Long-Term Disability (LTD) Plan – the latter of which requires sustained eligibility

for the former, or for Workers' Compensation, as a precondition of receiving benefits. Id. at *2.

After Sedgwick, the claims administrator for both plans, upheld these denials, Foster filed the

present lawsuit to clarify and enforce her rights under the plans, as permitted by the Employee

Retirement Income Security Act (ERISA). Id.; see also 29 U.S.C. § 1132(a); Compl., ¶¶ 1-4.

Defendants thereafter moved for summary judgment, contending, first, that the STD Plan

was not covered by ERISA, and, second, that Foster was not eligible for benefits under the LTD

Plan. See ECF No. 22 (Def. MSJ) at 1-2. Concurring with both contentions, the Court granted

the Motion.

In its Opinion, the Court began by noting that Foster had unambiguously conceded that

the STD Plan is not governed by ERISA, and that such concession seemed wise given that the

Plan resembled a payroll-practices plan rather than an employee-benefit plan that would be

covered by the statute. See Foster, 2015 WL 5118360, at *3. Her remedy, therefore, would lie,

if at all, in state contract law. Id.

The Court next turned to the LTD Plan, which all parties agreed was governed by

ERISA. Id. at *4. As a threshold matter, Plaintiff had argued that the Court should review her

denial of benefits de novo, but Sedgwick had insisted that a more deferential standard of review

was required. Id. at *4-5. The Court concluded that when a benefits plan such as this one vests

its administrator with the authority to assess a claimant's eligibility for benefits, such authority is

discretionary and therefore may only be reviewed for abuse of discretion. Id. The Court thus

employed that standard. Id. at *5-7.

In considering the merits, the Court first noted that the LTD Plan requires that claimants

be disabled for a 180-day "waiting period," during which they (1) may not return to work for

more than 30 days and (2) must maintain eligibility for STD benefits or Workers' Compensation.

<u>See</u> ECF No. 22, Exh. 3 (LTD Plan) at 4-5.  Sedgwick informed Foster that it denied her request

for LTD benefits because she had failed to satisfy either of the two waiting-period requirements.

<u>See</u> ECF No. 22, Exh. 17 (LTD Denial Letter).  Relying on the evidence in the record, the Court

concluded that Sedgwick did not abuse its discretion in deciding that Foster had not proven that

she was entitled to STD benefits throughout the waiting period.  <u>See</u> <u>Foster</u>, 2015 WL 5118360,

at *6-7.  The Court further concluded, *inter alia*, that Foster had not presented evidence that a

conflict of interest altered or in any way motivated Sedgwick's eligibility determination in her

case.  <u>Id.</u> at *8.

On September 25, 2015, Plaintiff timely filed the instant Motion for Reconsideration and

for Leave to File an Amended Complaint.  <u>See</u> ECF No. 30.

## II.     Legal Standard

Federal Rule of Civil Procedure 59(e) permits the filing of a motion to alter or amend a

judgment when such motion is filed within 28 days after the judgment's entry.  The Court must

apply a "stringent" standard when evaluating Rule 59(e) motions.  <u>See</u> <u>Ciralsky v. CIA</u>, 355 F.3d

661, 673 (D.C. Cir. 2004).  "A Rule 59(e) motion is discretionary and need not be granted unless

the district court finds that there is an intervening change of controlling law, the availability of

new evidence, or the need to correct a clear error or prevent manifest injustice."  <u>Firestone v.</u>

<u>Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citation omitted);

<u>see also</u> 11 C. Wright & A. Miller, <u>Fed. Prac. & Proc. Civ.</u> § 2810.1 at 158-62 (3d ed. 2012)

(stating that the "four basic grounds" for Rule 59(e) motion are "manifest errors of law or fact,"

"newly discovered or previously unavailable evidence," "prevent[ion of] manifest injustice," and

"intervening change in controlling law").  Critically, Rule 59(e) "is not a vehicle to present a new

3

legal theory that was available prior to judgment." Patton Boggs LLP v. Chevron Corp., 683

F.3d 397, 403 (D.C. Cir. 2012).

**III.    Analysis**

In her Motion for Reconsideration, Foster advances two new theories about the STD

Plan: Abjuring her prior concession that the Plan was not covered by ERISA, she now contends

that it is covered by the statute.  Alternatively, she asserts that the STD Plan is so "related" to the

ERISA-covered LTD Plan that ERISA preempts any state-law remedies; as a result, she believes,

her claim lies only under ERISA.  She also repeats two previously argued theories about the

LTD Plan – namely, that the Court should have reviewed Sedgwick's decision to deny her LTD

benefits under a *de novo* standard, and that Sedgwick improperly labored under a conflict of

interest as the claims administrator for both Plans.  Last, Plaintiff asks that the Court permit her

to amend her Complaint to include a claim that Defendants interfered with her rights under these

Plans, in violation of ERISA § 510.  See 29 U.S.C. § 1140.  The Court will address each of these

issues in turn.

A.  STD Plan

Plaintiff devotes the majority of her Motion to the STD Plan.  Her two contentions about

that Plan, while presented as alternatives, both assert that Sedgwick's denial of her claim for

STD benefits should have been evaluated under ERISA.  Foster's first argument, wholly absent

from her summary-judgment briefing, is that although the STD Plan looks like a payroll-

practices plan not governed by ERISA, it actually is an ERISA plan.  See Mot. at 6.  As a result,

she insists, the Court should have considered whether the denial of STD benefits violated

ERISA.  Her second argument, in the alternative, is that the STD Plan "relates to" the ERISA-

governed LTD Plan in such a way as to preempt any state-law relief.

4

To begin, the Court must underscore, as do Defendants, that Plaintiff's position is directly at odds with her prior express and unequivocal concession that the STD Plan is <u>not</u> governed by ERISA.  <u>See</u> MSJ Opp. at 1 ("Defendants assert <u>and Plaintiff agrees</u> that the Short-Term Disability Plan ("STD") is not plan [*sic*] covered under the Employee Retirement Income Security Act.") (emphasis added).  Plaintiff has offered no reason why she could not have raised her new arguments in her summary-judgment submissions, nor has she explained in her current Motion why she opted to take her earlier position that the Plan is not covered by ERISA and why she subsequently changed her mind.  This omission is problematic for her, as it is well established that Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks and citation omitted); <u>see also</u> <u>Patton Boggs LLP v. Chevron Corp.</u>, 683 F.3d 397, 403 (D.C. Cir. 2012) ("Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment.").  The Court can ascertain no reason why either of Plaintiff's current positions was unavailable to her before judgment, as neither a change in the law nor the discovery of new evidence appears to have motivated her about-face.  As such, her new theories that the STD Plan <u>is</u> an ERISA plan or is "related" to such a plan do not provide a basis for vacating the Court's judgment.

The Court's analysis could end there.  Yet even if the Court were inclined to consider a contradictory litigation position in a Rule 59(e) motion, it would not be persuaded by Plaintiff's new contentions.  Her first argument is doomed by her failure to identify any authority suggesting that if a benefits plan walks like a payroll practice and talks like a payroll practice, it nevertheless is not such a practice.  The determination of whether a plan is an ERISA plan, rather

than a payroll-practice plan is, obviously, a fact-intensive, multi-factored inquiry.  See

Kolkowski v. Goodrich Corp., 448 F.3d 843, 847 (6th Cir. 2006) ("Determining the existence of

an ERISA plan is a question of fact to be answered in light of all the surrounding circumstances

and facts from the point of view of a reasonable person. . . .").  Foster has never undertaken such

an inquiry; neither in her summary-judgment papers nor in her present Motion does she offer a

robust explanation of how all of the "circumstances and facts" of the STD Plan militate in favor

of finding an ERISA plan here.

Even if the STD Plan is not directly covered by ERISA, Plaintiff now argues in the

alternative that it "relates to" the LTD Plan, which is governed by that statute.  See Mot. at 10.

As a result, she maintains, relief under ERISA must be available to her, since any state-law

breach-of-contract claim could not survive ERISA's fairly broad preemption provision, under

which the statute "shall supersede any and all State laws" and causes of action that "relate to any

employee benefit plan."  29 U.S.C. § 1144(a).  The cases Foster marshals in purported support of

her alternative approach, however, find state-law remedies preempted only where they would

overlap with an extant ERISA claim.  See, e.g., Aetna Health Inc. v. Davila, 542 U.S. 200, 209

(2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA

civil enforcement remedy conflicts with the clear congressional intent to make the ERISA

remedy exclusive and is therefore pre-empted.").  Indeed, the Supreme Court has been clear that

the "relate to" language in ERISA's preemption clause only excludes state-law causes of action

in which "the existence of an ERISA plan . . . is a critical factor in establishing liability."

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40 (1990).  Yet that is not the case here,

for nothing in the LTD Plan would have any bearing on the merits of a breach-of-contract claim

based on the denial of STD benefits.

Ignoring these nuances, Plaintiff merely asserts that because eligibility under the LTD

Plan, an ERISA plan, incorporates eligibility for the STD Plan, a non-ERISA plan, the two are

"related," thereby preempting any non-ERISA claims for relief.  Of course, since eligibility for

Workers' Compensation is an alternative path that can also qualify Sun Trust employees for

benefits under the LTD Plan, it is not clear that these Plans are "related" in this way.  In any

event, because eligibility for STD benefits is not at all affected by the LTD Plan, no state-law

cause of action based on the STD Plan "relates" to the LTD Plan in such a way that it would

preempted by ERISA.   The Court, accordingly, concludes that even if they were not waived as a

result of her concession, neither of Plaintiff's new theories about the STD Plan provides a basis

for disturbing the Court's judgment.

   B.  LTD Plan

Although the lion's share of Plaintiff's Motion centers on the STD Plan, it also briefly

addresses the LTD Plan.  Foster does not appear to contest the merits of the Court's decision

with respect to the latter; instead, she states, confusingly, that "There Was No LTD Claim Before

The Court for Review" because "[t]he only issue related to the LTD plan involved whether

Plaintiff was eligible to apply for the benefits."  Mot. at 15.  Although the Court does not

precisely follow this argument, it notes that throughout this litigation, Foster has, in fact, pressed

a claim for relief based on the LTD Plan.  See Compl., ¶ 23 ("Plaintiff requests that this court

review the denial of benefits in this case and declare that she is entitled to all benefits under the

short and long term disability plans. . . .") (emphasis added).

Foster next reasserts her contentions that (1) the LTD Plan did not confer discretionary

authority on Sedgwick as its claims administrator, so the standard of review for a claim under

that Plan is de novo; and (2) Sedgwick operated under an "apparent conflict of interest embedded

7

in the relationship between the STD Plan and the LTD Plan." Mot. at 15-16. Both of these issues were briefed by Plaintiff at the summary-judgment stage and resolved by the Court in its Memorandum Opinion. See Foster, 2015 WL 5118360, at *4-5 (LTD Plan confers discretionary authority, so Court reviews only for abuse of discretion), *8 (mere existence of a conflict of interest insufficient to render denial of benefits unreasonable); see also Opp. at 4-5 (Plaintiff entitled to *de novo* review because no discretionary authority to administer the Plans), 17 (conflict of interest). It is therefore unclear why Foster now proclaims that "this issue" of Sedgwick's discretionary authority and the attendant standard of review were "never raised by Plaintiff." Mot. at 15; see also MSJ at 18 (Defendants' argument that LTD Plan was subject to abuse-of-discretion review).

Plaintiff proffers no newly discovered evidence nor any intervening change in the law meriting reexamination of the Court's earlier resolution of these issues. Foster belatedly suggests, in her Reply, that the Court did not rely on the correct documents in interpreting the Plan, see Reply at 11-14, but she does not identify the documents the Court should have used, and she further does not explain why she failed to object to the documents introduced by Defendants or to submit the correct documents at summary judgment. As such, the Court stands by its determination that the denial of LTD benefits is to be reviewed under a deferential standard in light of Sedgwick's discretion to assess entitlement to benefits under that Plan, and that, under this standard, Sedgwick's denial of benefits was reasonable. Finally, Plaintiff has not presented evidence establishing that a conflict of interest undermined the reasonableness of that decision. Her arguments are "essentially a rehash of the arguments presented to and previously rejected by this Court" and thus do not warrant vacatur of the final judgment. New York v. United States, 880 F. Supp. 37, 39 (D.D.C. 1995).

C.  Leave to Amend Complaint

As previously noted, Plaintiff's Motion for Reconsideration also includes a request for leave to amend her Complaint.  See Mot. at 12.  The proposed amendment includes a new cause of action claiming that Defendants violated Section 510 of ERISA by "interfering with the attainment of [her] right[s] . . . under the plan[s]."  Id.; 29 U.S.C. § 1140.

Leave to amend a complaint after judgment may be granted only after the Court vacates that judgment.  See Ciralsky, 355 F.3d at 673 ("[O]nce a final judgment has been entered, a court cannot permit an amendment unless the plaintiff first satisfies Rule 59(e)'s more stringent standard for setting aside that judgment.") (citing Firestone, 76 F.3d at 1208) (internal quotation marks omitted); see also Odhiambo v. Republic of Kenya, 947 F. Supp. 2d 30, 40 (D.D.C. 2013) (applying this standard); Johnson v. District of Columbia, 244 F.R.D. 1, 4 (D.D.C. 2007) (same). Because Foster has advanced no meritorious ground for vacating the judgment, the Court cannot grant her request to amend.

As a final note, to the extent that she sought to raise a claim under ERISA § 510 in her prior Opposition to Defendants' Motion for Summary Judgment, her brief citation to that statutory provision, see Opp. at 19, was too cursory to do so.  As the D.C. Circuit has often reiterated, "[A] request for leave [to amend] must be submitted in the form of a written motion." Benoit v. U.S. Dept. of Agriculture, 608 F.3d 17, 21 (D.C. Cir. 2010) (citation and internal quotation marks omitted; second alteration in original).   Moreover, "[i]t is well-established in this district that a plaintiff cannot amend his Complaint in an opposition to a defendant's motion for summary judgment."  Jo v. District of Columbia, 582 F. Supp. 2d 51, 64 (D.D.C. 2008); DMSC, Inc. v. Convera Corp., 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempt to broaden claims and thereby amend complaint in opposition to summary-judgment

motion).  In any event, the "interference" claim in Plaintiff's Opposition asserted that Sun Trust unlawfully applied a different definition of "disability" in evaluating her Family and Medical Leave Act claims from what it employed in assessing her STD claim – an assertion the Court addressed in its prior opinion.  See Foster, 2015 WL 5118360, at *8.  Then, as now, the Court saw no need to permit amendment.

## IV.   Conclusion

As Plaintiff has not met the exacting Rule 59(e) standard for altering the judgment for Defendants, the Court will deny her Motion.  An Order to that effect will issue this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 1, 2015